UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
JENNIFER COLLINS,

        Plaintiff,

– against –

CHRISTOPHER ROCKEFELLER LINDSTROM;
GIVING BACK FUND, INC.; and NEXUS GLOBAL

        Defendants.
-----------------------------------------------------------------

Case No.:

**COMPLAINT**

**ASSIGNED JUDGE:**

**JURY TRIAL DEMANDED**

July 17, 2018

    Plaintiff, Jennifer Collins ("Ms. Collins"), by her undersigned attorney, for her Complaint against Defendants, Christopher Rockefeller Lindstrom ("Mr. Lindstrom"), Giving Back Fund, Inc. ("The Fund"), and NEXUS Global ("NEXUS") alleges as follows:

## NATURE OF THE ACTION

1. Ms. Collins brings this action to hold the Defendants accountable for slandering her, and permitting this slander to cause her emotional distress, by causing untruthful statements about her to be communicated by Defendant Mr. Lindstrom to Defendant Nexus Global ("NEXUS"), and for those statements to have gone unverified, and for causing Ms. Collins to be barred from a NEXUS Summit to which she had been previously accepted to attend, with a scholarship, prior to the slanderous remarks having been communicated.

2. Ms. Collins similarly brings this action in order to protect her rights under Section 504 of the Rehabilitation Act of 1973 Pub. L. No. 93-112, 87 Stat. 394 (Sept. 26, 1973), codified at 29 U.S.C. 701 et. seq. which were violated when NEXUS, upon information and belief, made a decision to exclude Ms. Collins from participation in its Global Youth Summit (for which it had previously accepted her and granted her a scholarship) based in large part on the slander of Ms. Collins by Defendant Mr. Lindstrom and thereby did perpetrate discrimination against her by demonstrating deliberate indifference concerning the fact that they were aware that Ms. Collins suffers from a bipolar disorder and acted rashly to revoke Ms. Collins' acceptance to their Summit without any consideration for her disability and how this would affect her state of mind.

3. Giving Back Fund, Inc. ("The Fund"), being a parent of NEXUS, is legally responsible for the actions of its agent.

4. The NEXUS Summit was announced by Defendant NEXUS as follows:

"The 4th annual NEXUS USA Summit will convene on January 31 – February 2, 2018 in Washington, DC. It brings together young philanthropists, impact investors, and allies – including family business members, successful entrepreneurs, and inspiring social change leaders. They will discuss challenges facing our country and the world today and innovative solutions to address them." *See* "NEXUS Global Youth Summit Announcement" attached as Exhibit "**A**" to Plaintiff's Affidavit.

5. Ms. Collins was slandered by Mr. Lindstrom in his effort to ensure that Claudia Welss, who holds an esteemed position with Defendant NEXUS and is otherwise involved in a serious relationship with both

Mr. Lindstrom and another man, was not inculcated by Ms. Collins at the NEXUS Summit. *See* ¶ 21 of Plaintiff's Affidavit.

6. Defendant NEXUS includes the following language concerning the proper steps to be taken in the event someone should witness a "code of conduct violation":

"In order to register for a NEXUS Summit, delegates must sign a 'Community Code of Conduct," which can also be found on our printed program and other Summit materials. We encourage you to read our Code of conduct below: 1. Non-Solicitation: Including but not limited to business/fundraising efforts and promotions. 2. Safe Space: Free from verbal, online, physical, or sexual harassment and assault. Free from discrimination on the basis of nationality, race, class, religion, age, ability, sexual orientation, perceived gender identity, or expression. 3. Drugs and Alcohol: Official Summit events are drug-free and alcohol is to be consumed responsibly. If you experience or witness behavior among NEXUS members that is not above-board you may report it via redflag@nexusglobal.org. The NEXUS Values Council, an independent body comprised solely of NEXUS Members, reviews concerns reported to redflag@nexusglobal.org. Please note that all correspondence with this email address is strictly confidential. The NEXUS Values Council reserves the right to take further action if necessary toward any member, speaker, sponsor or partner that is found to be in violation of the Code of Conduct. We appreciate your assistance in maintaining a respectful and supportive environment for all." *See* "Values Council" attached as Exhibit "**R**" to Plaintiff's Affidavit.

7. The actions of Mr. Lindstrom are in violation of New York prohibitions against slander.

8. The intentional actions of Defendants Giving Back Fund, Inc. ("The Fund") and NEXUS were in violation of their own rules and caused infliction of emotional distress.

9. The cumulative actions of Defendants caused Ms.Collins to be barred from an event through which she would have been in a position to establish relationships which could have profoundly benefitted her in her efforts to make a positive mark on society.

10. Ms.Collins brings this action in order to ensure that the Defendants are held accountable for their own ideals of "connecting members, and promoting collaboration and supporting our incredible initiatives" and to ensure that the federally-supported entities (The Fund and NEXUS) are held responsible for their violations of the Rehabilitation Act.

## PARTIES, JURISDICTION AND VENUE

11. Mr. Lindstrom is an individual who resides in and is a citizen of the State of New York and, upon information and belief, is the co-chair of Defendant NEXUS' regenerative lab.

12. Ms.Collins is an individual who resides in and is a citizen of the State of New York where she is employed by Baltic Street, Inc. as a "Program Manager" in the mental health clinic through which she advocates for individuals with mental disabilities.

13. The Giving Back Fund, Inc. (Federal Tax ID 04-3367888) is a Massachusetts nonprofit corporation with federal tax exempt status as a public charity under Section 501(c)(3) headquartered at the street address of 5757 W. Century Blvd. Los Angeles, CA, 90045 which, upon information and belief, helps set

up donor-advised accounts for celebrity performers and athletes.

14. NEXUS Global, upon information and belief, is a project of the Giving Back Fund, Inc., which was established in 2011 with headquarters which are located at 1440 G Street NW Washington, DC 20005.

15. This Court has personal jurisdiction over Mr. Lindstrom because he is domiciled in the State of New York.

16. This Court has personal jurisdiction over Defendants NEXUS and The Fund under federal rules of specific jurisdiction and because each individually maintains continuous, and systematic, contacts with the State of New York and this case is related to those contacts.

17. This Court has original jurisdiction over this case pursuant to 28 USC § 1331 because it contemplates issues arising out of the Rehabilitation Act which is a federal law.

18. Venue properly lies within this judicial district pursuant to 28 USC 1391 because a substantial part of the events arose in the City of New York and because This Court has personal jurisdiction over all of the Defendants.

## THE FACTS

### OVERVIEW OF THE PARTIES

19. Mr. Lindstrom is a thirty-nine year old fifth-generation member of the Rockefeller family.

20. In 2003, upon information and belief, Mr. Lindstrom began work at the Schumacher Center for a New Economics as a volunteer staff through which position he was able to organize a major international conference on complementary currencies which brought roughly 300 people from 17 different countries together.

21. In 2005, upon information and belief, Mr. Lindstrom began a "funders circle" dedicated to raising awareness around money as an engineered system that can feasibly be re-engineered.

22. In 2006, Mr. Lindstom helped found "Berkshares" for use in the Southern Berkshires that to date has received international media attention.

23. Mr. Lindstrom, upon information and belief, is the founder of "CycleEffect Regenerative Ventures" ("CycleEffect") which is based in Boulder, Colorado and New York City.

24. CycleEffect promotes itself as a "hybrid Venture Capital Cooperative Firm investing In The Circular and Regenerative Economy."

25. CycleEffect states on its web site that it works to "develop a shared interest in each other's success and the success of the collective whole valuing all forms of capital for ownership."

26. Upon information, and belief, Mr. Lindstrom is a prominent member of the NEXUS team.

27. Mr. Lindstrom, upon information and belief, is in a sexual relationship with Claudia Welss who is a prominent member of the NEXUS team.

28. Ms.Collins is a twenty-nine-year-old woman and the founder of "Freedom2Fit Inc." which is recognized by the Internal Revenue Service as a 501(c)(3) not-for-profit charity whose mission is to "help individuals to make healthier choices by spreading creativity, healing, empowerment, and education; to expand access to holistic wellness and fitness programs which are free or affordable especially to

populations considered to be at-risk; and to shape a culture that values health, well-being, and reciprocity."

29. Ms.Collins is also the founder of "GTI Enterprises" which is a privately owned and operated C-corporation registered in the State of California whose mission is to create a portal through which individuals and companies can collaborate to access and distribute all of the most innovative products, services, and events that promote personal health and well-being, social responsibility, and ego-regeneration.

30. Ms. Collins is currently employed by Baltic Street AEH, inc. where she is a Program Manager for a community center serving, and advocating, for people with mental health diagnoses.

31. NEXUS, a project of Giving Back, promotes itself on its web site as an organization that "catalyzes new leadership and accelerates solutions to global problems" whose mission is to "connect, inspire, and activate exceptional social innovators and the next generation of influential families around the world" which challenges people to "imagine a community where everyone has your back for the rest of your life. WELCOME to NEXUS."

32. NEXUS has organized 37 Summits worldwide at which, according to their web-site, they "unite young investors, social entrepreneurs, and allies to catalyze new leadership and accelerate global solutions."

33. The Fund is a national nonprofit which markets itself through its web-site as an "organization that encourages and facilitates charitable giving by professional athletes, celebrities, high net worth individuals, existing nonprofit organizations, corporations and others who truly desire to give back" and which provides "philanthropic consulting, management and administrative services while operating as a flexible, convenient vehicle for establishing individual foundations and fiscally sponsored projects under a governance structure like that of a community foundation."

34. The Fund is a grantee of the United States government.

35. The Fund was awarded $492,357.00 in grant money from the Regional Innovation Strategies Program which is administered by the Office of Innovation and Entrepreneurship under the auspices of the United States Economic Development Administration on or about September 20, 2017.

### Mr. Lindstrom and Ms.Collins Meet and Become More Acquainted Platonically

36. Ms.Collins and Mr. Lindstrom were mutual acquaintances of an individual who was acting as the caretaker of a property in Amenia, New York. *See* ¶ 5 of Plaintiff's Affidavit.

37. The property being stewarded was in jeopardy of being foreclosed on at the time of their initial meeting. *See* ¶ 5 of Plaintiff's Affidavit.

38. Ms. Collins was a paid consultant for ARC 38 assigned with the fundraising efforts for the property. *See* ¶ 6 of Plaintiff's Affidavit.

39. Mr. Lindstom and Ms. Collins worked together in a professional capacity to ensure that the land would remain owned by NYS non-profit organization "ARC-38" which had been opened up to travelers and those who had no place to go. *See* ¶ 7 of Plaintiff's Affidavit.

40. Mr. Lindstrom was gracious enough to provide a 6-month bridge loan to non-profit organization "ARC-38" of $184,000 and the property was brought out of foreclosure on or about April of 2017. *See* ¶

8 of Plaintiff's Affidavit.

41. Following the closing on the property, Ms. Collins was assigned with assisting the refinance of Mr. Lindstrom's bridge loan and/or renegotiating the terms of the loan. *See* ¶ 9 of Plaintiff's Affidavit.

42. Ms. Collins and Mr. Lindstrom met for the first time alone at a coffee shop near Ms. Collins home in Brooklyn. *See* ¶ 10 of Plaintiff's Affidavit.

43. In addition to meeting regarding the bridge loan, Ms. Collins felt as though she and Mr. Lindstrom had additional commonalities concerning their business pursuits including broader land-stewardship initiatives, cryptocurrency, and health and wellness programs, so she asked to see him again. *See* ¶ 11 of Plaintiff's Affidavit.

44. Mr. Lindstrom and Ms. Collins saw each other again at Mr. Lindstrom's farm in Hudson, New York in the Summer of 2017. *See* ¶ 12 of Plaintiff's Affidavit.

45. The day Ms. Collins met with Mr. Lindstrom at his farm consisted mostly of conversation related to business affairs except for the moment when Mr. Lindstrom grabbed Ms.Collins' phone out of her hand and scrolled through her private photos which included a naked picture of Ms. Collins. *See* ¶ 12 of Plaintiff's Affidavit.

46. At the conclusion of their day together, Mr. Lindstrom requested they have dinner together in response to Ms.Collins' interest in sharing her business plans with Mr. Lindstrom. *See* ¶ 13 of Plaintiff's Affidavit.

47. At dinner, Ms. Collins showed Mr. Lindstrom her business plans and he stated that he could introduce her to one of his friends who was working on similar initiatives and disclosed his relationship with Defendant NEXUS. *See* ¶ 14 of Plaintiff's Affidavit.

48. The evening ended without any physical contact of any kind. *See* ¶ 15 of Plaintiff's Affidavit.

49. Ms. Collins and Mr. Lindstrom communicated via text after they went their separate ways that night. *See* ¶ 16 of Plaintiff's Affidavit.

50. Mr. Lindstrom wrote, via e-mail, "Please send some of those photos from the Hemp field! And maybe the shower one , too?" *See* ¶ 17 of Plaintiff's Affidavit; *See* "Text Message Requesting Pictures" attached as Exhibit "**B**" to Plaintiff's Affidavit.

51. Mr. Lindstrom offered to paint a portrait of Ms. Collins based on the nude photos he had seen of her and Ms. Collins agreed. *See* ¶ 18 of Plaintiff's Affidavit.

**Mr. Lindstrom Grants Ms. Collins the Permission to Use Him as a Reference For the NEXUS Summit**

52. Ms. Collins and Mr. Lindstrom exchanged text messages pertaining to the NEXUS Summit sometime in the summer of 2017. In that text message exchange, Ms. Collins expressed interest in the NEXUS Summit:

> "If there's a spot at nexus for me I'd love to attend!!! I'm sure it's too late but seems oh so juicy"

and Mr. Lindstrom replied:

"I wish there was...it filled up a long time ago. I can endorse you for the US Summit in February." *See* ¶ 19 of Plaintiff's Affidavit. *See* "Offer of Endorsement" attached as Exhibit "**C**" to Plaintiff's Affidavit.

### Ms. Collins Refuses Mr. Lindstrom's Pleas to Sleep With Him

53. Mr. Lindstrom and Ms. Collins met for the third time at a restaurant in Brooklyn. *See* ¶ 20 of Plaintiff's Affidavit.

54. At this third meeting, Mr. Lindstrom divulged the information to Ms. Collins that he was romantically involved with a woman who is twenty years his elder and who is also involved quite seriously with another man. *See* ¶ 20 of Plaintiff's Affidavit.

55. At no time did Mr. Lindstrom disclose Claudia Welss involvement with Nexus or any similar conflict of interest. *See* ¶ 21 of Plaintiff's Affidavit.

56. After their dinner together, Mr. Lindstrom kissed Ms. Collins, held her hand, walked her to his his car, kissed her again, and drove her home. *See* ¶ 22 of Plaintiff's Affidavit.

57. Ms. Collins communicated to Mr. Lindstrom that she wouldn't feel comfortable moving beyond kissing until she knew how his other partner felt and that she was uncomfortable because of their business relationship. *See* ¶ 23 of Plaintiff's Affidavit.

58. Mr. Lindstrom agreed and they both resisted any further physical actions. *See* ¶ 23-24 of Plaintiff's Affidavit.

59. Ms. Collins sent Mr. Lindstrom a text stating that she wanted to take things slow and Mr. Lindstrom agreed but also stated that he felt "sexually frustrated." *See* ¶ 25 of Plaintiff's Affidavit; *See also* "Sexually Frustrated Text Message" attached as Exhibit "**D**" to Plaintiff's Affidavit.

### Mr. Lindstrom Leaves Ms. Collins Experiencing Relapses of PTSD After He Abruptly Aborts Their Sexual Relationship

60. Ms. Collins and Mr. Lindstrom had consensual sex two times. *See* ¶ 26 of Plaintiff's Affidavit.

61. Ms. Collins and Mr. Lindstrom had intercourse during her second visit to his home in Hudson, NY and again on a hiking trip in New Hampshire in August of 2017. *See* ¶ 27 of Plaintiff's Affidavit.

62. Mr. Lindstrom informed Ms. Collins that he viewed their relationship as that of being friends because he was too in love with Claudia Welss. *See* ¶ 28 of Plaintiff's Affidavit.

63. Ms. Collins states that she felt "extremely used" and "devastated" by Mr. Lindstrom. *See* ¶ 29 of Plaintiff's Affidavit.

64. Ms. Collins states that she felt her bipolar disorder from an incident in which she had been raped had been triggered. *See* ¶ 30 of Plaintiff's Affidavit.

65. Ms. Collins did her best to maintain a healthy and friendly professional relationship with Mr. Lindstrom after the events in New Hampshire in August of 2017. *See* ¶ 31 of Plaintiff's Affidavit.

66. Ms. Collins and Mr. Lindstrom made arrangements to see each other in October of 2017 in order for her to have the opportunity to express her emotions and difficulties as a result of the events in New Hampshire. *See* ¶ 32 of Plaintiff's Affidavit.

67. Mr. Lindstrom explained to Ms. Collins, at this meeting in October of 2017, that he had a lack of time. *See* ¶ 33 of Plaintiff's Affidavit.

68. The meeting in October of 2017 consisted mostly of a conversation related to their mutual business interests and Ms. Collins was not afforded the opportunity to speak with Mr. Lindstrom about their personal issues. *See* ¶ 34 of Plaintiff's Affidavit.

69. Ms. Collins sent Mr. Lindstrom an email addressing her discomfort with the abrupt ending to their sexual relationship and asking him to follow up with his multiple business promises that were made pre-intimacy and Mr. Lindstrom never responded. *See* ¶ 35 of Plaintiff's Affidavit; *See also* "Discomfort Email" attached as Exhibit "**E**" to Plaintiff's Affidavit.

70. Ms. Collins was hospitalized at Maimonides Hospital, in Brooklyn, NY, between November 18, 2017, and November 28, 2017 for psychiatric purposes during which she was restrained with leather straps and injected with a sedative and divulged to both her doctors in the hospital (and her psychiatrist and psychologist at the outpatient clinic) that her episodes were directly related to feeling used and silenced by Mr. Lindstrom. *See* ¶ 36-37 of Plaintiff's Affidavit; *See* "Maimonides" attached as Exhibit "**F**" to Plaintiff's Affidavit.

**Ms. Collins Receives an Invitation to Attend the NEXUS Summit, Applies, and is Accepted**

71. Soon after her time at Maimonides Hospital, Ms. Collins received an e-mail inviting her to apply to the NEXUS Summit in Washington, DC. *See* ¶ 38 of Plaintiff's Affidavit.

72. The invitation to the NEXUS Summit included an invitation to a film event in New york City. *See* ¶ 39 of Plaintiff's Affidavit.

73. Ms. Collins had submitted a short film to Sundance that she had presented to Mr. Lindstrom for potential investment in and so, seeking to re-engage Mr. Lindstrom in a business relationship, Ms. Collins e-mailed Mr. Lindstrom immediately and invited him to attend the movie group with her. *See* ¶ 40 of Plaintiff's Affidavit.

74. Mr. Lindstrom did not respond to the invitation to attend the movie, and so Ms. Collins reached out to the film group and was invited to attend the event anyway on her own, where she built relationships with Nexus members based on her own merit and credibility. *See* ¶ 41 of Plaintiff's Affidavit.

75. On December 7, 2017, Ms. Collins told Mr. Lindstrom that she was going to apply to the NEXUS Summit event "no later than tomorrow." *See* ¶ 42 of Plaintiff's Affidavit; *See also* "Email Invitation and Intent to Apply" attached as Exhibit "**G**" to Plaintiff's Affidavit.

76. Late in the business day on December 8, 2017, Ms. Collins sent Mr. Lindstrom an e-mail with a copy of her NEXUS application. *See* ¶ 43 of Plaintiff's Affidavit; *See also* "Email Application" attached as Exhibit "**H**" to Plaintiff's Affidavit.

77. On December 11, 2017, Ms. Collins sent Mr. Lindstrom another e-mail inquiring as to whether he was available to meet with her. *See* ¶ 44 of Plaintiff's Affidavit; *See also* "December 11, 2017 email" attached as exhibit "**I**" to Plaintiff's Affidavit.

78. Later in the evening of December 11, 2017, Ms. Collins sent Mr. Lindstrom a follow-up e-mail inquiring as to why he was being unresponsive to her messages. *See* ¶ 45 of Plaintiff's Affidavit; *See also* "Evening Email dated December 11, 2017" attached as Exhibit "**J**" to Plaintiff's Affidavit.

79. Mr. Lindstrom responded by stating that Ms. Collins had been "overbearing" and that he was "very

reluctant" to see her because she had been "inserting herself into" his networks without his approval. *See* ¶ 46 of Plaintiff's Affidavit; *See also* "Lindstrom Email" attached as Exhibit "**K**" to Plaintiff's Affidavit.

80. On December 26, 2017, Ms. Collins forwarded Mr. Lindstrom a copy of her request for a scholarship to the NEXUS Summit for which she had been accepted and had received a scholarship.

81. Mr. Lindstrom never responded to this message of December 26, 2017. *See* ¶ 50 of Plaintiff's Affidavit; *See also* "December 26, 2017 Email" attached as Exhibit "**M**" to Plaintiff's Affidavit.

## Mr. Lindstrom Threatens to Revoke His Reference to NEXUS and NEXUS Subsequently Revokes Ms. Collins' Invitation to its Summit

82. On January 5, 2018, Mr. Lindstrom sent Ms. Collins an e-mail asserting that Ms. Collins was harassing him, that he would block her e-mails, and that he was planning on reporting Ms. Collins to NEXUS for applying "without" his "full consent," and that she was "not a fit" for NEXUS. *See* ¶ 52 of Plaintiff's Affidavit; *See also* "January 5, 2018, email" attached as exhibit "**N**" to Plaintiff's Affidavit.

83. Ms. Collins responded by telling Mr. Lindstrom that if he acted upon his threat and made false accusations to NEXUS about her she would provide them with written evidence of his offer to endorse her and that she would inform them that he pulled his endorsement after she stopped sleeping with him. *See* ¶ 53 of Plaintiff's Affidavit; *See also* "January 5, 2018, email" attached as exhibit "**N**" to Plaintiff's Affidavit.

84. On January 15, 2018, NEXUS responded to Ms. Collins' inquiry as to her status by writing:

"Thank you for your interest in the 2018 NEXUS USA Summit. NEXUS reserves the right to reach out to existing members that applicants are connected to as references and to re-evaluate applications at any time. We regret to inform you that we can no longer honor your acceptance to the 2018 Summit and have refunded the donation you made via Universe." *See* "January 15, 2018" attached as Exhibit "**O**" to Plaintiff's Affidavit.

## Ms. Collins Communicates to NEXUS Her Objections to Her Invitation Being Revoked Including Her Status as a Person With a Mental Handicap

85. On January 15, 2018, Ms. Collins sent an e-mail disputing NEXUS' decision to revoke her acceptance to attend their Summit through which she informed the organization that:

[she] has "written evidence that Chris Lindstrom agreed to endorse me for this summit as well as evidence that I kept him informed of my intention to apply when the application was made public. At no time during my application process did he indicate to me that he had any problem with me applying. He was cc'd on every email, including my request for a scholarship.
If you reached out to Chris Lindstrom to check my reference and he denied his endorsement, it is a lie to keep me silent about his personal relationship with me, during which he abused his position of power (he was in a position where my collective owed him 184,000) and he used that as well as false promises to engage with me sexually.

If NEXUS is as progressive as on social issues as it appears to be, then the right thing to do in this situation is to review my evidence before making a decision to reject me from the summit.

As you know, all to well, female leaders are kept silent, and are oppressed, with their reputation damaged by powerful men and that is exactly what is going on here. With all due respect to your community, I request a full review of my evidence as well as a phone interview before you deny my application." *See* "January 15, 2018" attached as Exhibit "**O**" to Plaintiff's Affidavit.

86. The Fund, being the parent of NEXUS, and having been awarded $492,357.00 in grant money from the Regional Innovation Strategies Program which is administered by the Office of Innovation and Entrepreneurship under the auspices of the United States Economic Development Administration on or about September 20, 2017 was informed, in pertinent part, by Ms. Collins through an e-mail to its agent NEXUS on January 15, 2018, that:

"Chris shamed me for my diagnosis of PTSD and bipolar disorder, the symptoms of which were flaring up because of him taking advantage of me! Then, he refused to met with me in person to discuss either

personal or business matters until I was 'centered' despite my explanation of my symptoms that were directly related to him taking advantage of me.
He then blatantly lied about being 'happy to meet up with me' despite my multiple attempts to achieve reconciliation in both professional and personal matters.

I have met several other NEXUS members who would be happy to endorse me for this summit and who have seen my work.

I come from a middle class family and my work is currently being reviewed by the Department of Housing and Urban Development as well as the Department of Integrative Medicine at USC. I have partners in Canada, Costa Rica, Norway that have solutions for carbon neutral energy efficient housing that also does green growing and aquaponics." *See* "January 15, 2018" attached as Exhibit "**P**" to Plaintiff's Affidavit.

87. On January 17, 2018, Ms. Collins provided NEXUS, and by proxy The Fund, with the documentation showing that Mr. Lindstrom had indeed provided her his permission to utilize him as a reference. *See* ¶ 57 of Plaintiff's Affidavit; *See also* "Email dated January 17, 2018" attached as exhibit "**P**" to Plaintiff's Affidavit.

88. On January 15, Mr. Lindstrom communicated to Ms. Collins his regret at having acted to have Ms. Collins lose her opportunity with NEXUS through an e-mail which stated that:
"So quick question, do you feel that you are not in your ego/fear space? That is a referral to your other accusation that I was acting out of ego fear. Because...yeah, I was. And so are you. You're ego fear triggers my ego fear and so it goes. We are in a cloud unable to see each other. Or ourselves. Clearly." *See* ¶ 59 of Plaintiff's Affidavit; *See also* "Apology Email" attached as Exhibit "**T**" to Plaintiff's Affidavit.

89. In an e-mail dated January 28, 2018, Mr. Lindstrom admitted to having what constitutes malice in his actions in having Ms. Collins barred from attending the NEXUS Summit as follows:

Ms. Collins provided this question: "Specifically, why did you never get back to me about NEXUS when you said you would?"

Mr. Lindstrom, in pertinent part, answered as follows: "After receiving multiple injurious emails, I determined that it would not be safe or appropriate to invite someone into my network who seemed very ready to discredit me publicly. Also, after I saw the full extent of your mania and volatility, even if you didn't try to discredit me, I was very unsure whether being associated with you would undermine my own reputation within the network or lead to similar drama with someone else within NEXUS. To be perfectly blunt, I lost trust in you."

Ms. Collins provided the following question: "Are both you and Claudia planning on attending NEXUS US Summit Feb 2018 or not? If so, did this have any bearing on your reluctance to fulfill your promise?"

Mr. Lindstrom responded as follows: "This was not the primary reason but I certainly felt protective of Claudia. I did not want to have to draw anyone else into this drama and I had no way of knowing that it wasn't your intent to make a public spectacle of it." *See* ¶ 60 of Plaintiff's Affidavit; *See also* "January 28, 2018, email" attached as Exhibit "**U**" to Plaintiff's Affidavit.

## CLAIMS FOR RELIEF

### COUNT I

(JENNIFER COLLINS against CHRISTOPHER ROCKEFELLER LINDSTROM)

(Slander)

90. Mrs. Collins re-alleges and incorporates paragraphs 1 through 89.

91. Mr. Lindstrom stated, or caused to be stated, false and defamatory statements in to Defendant NEXUS which did, and had the tendency to, expose Ms. Collins to hatred, contempt,

ridicule and/or disgrace.

92. The slanderous statements uttered to NEXUS are of, and concerning, Ms. Collins, and reasonably understood to be about Ms. Collins who is also known as Jenny Carrington, a stage name that she has been using for over 3 years and which is associated with her public personality included on accredited film sites like IMDB and in various press articles of which Mr. Lindstrom was fully aware of.

93. The slanderous statements uttered to NEXUS are false.

94. Mr. Lindstrom uttered the slanderous remarks to NEXUS knowing that they are false or with reckless disregard for the truth of the statements.

95. The slanderous statements Mr. Lindstrom uttered to NEXUS about Ms. Collins constitute defamation per se because they tended to injure Ms. Collins in her trade, business or profession and further stigmatized an individual who suffers from a mental disease or defect.

96. In light of Ms. Collins' standing in the community, the nature of the statements made about her, the extent to which those statements were circulated, and the tendency of such statements to injure someone such as Ms. Collins, the slanderous statements uttered by Mr. Lindstrom to NEXUS have directly and proximately caused Ms. Collins to suffer significant damages, including damage to her reputation, humiliation, embarrassment, mental suffering, shame and emotional distress. These damages are ongoing in nature and will continue to be suffered in the future.

97. Mr. Lindstrom's conduct was committed knowingly, intentionally, willfully, wantonly and maliciously, with the intent to harm Ms. Collins, or in blatant disregard of the substantial likelihood of causing her harm, thereby entitling Ms. Collins to an award of punitive damages.

98. As a direct and proximate result of Mr. Lindstrom's misconduct, Ms. Collins is entitled to compensatory, special and punitive damages in an amount to be proven at trial far in excess of $75,000.00.

### COUNT II
(JENNIFER COLLINS AGAINST CHRISTOPHER ROCKEFELLER LINDSTROM; GIVING BACK FUND, INC.; and NEXUS GLOBAL)

(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

99. Mrs. Collins re-alleges and incorporates paragraphs 1 through 98.

100. Defendants' extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Plaintiff.

101. Defendants acted with deliberate disregard as to the high possibility that severe emotional distress would occur.

102. Defendants' conduct caused suffering for Plaintiff at levels that no reasonable person should have to endure.

103. Holding Giving Back Fund, Inc. liable advances the policy goals of respondeat superior, including the prevention of future injuries and assurance of compensation to victims, given that Plaintiff does not have separate remedies under Title VII because she was not an employee of NEXUS.

### COUNT III

(JENNIFER COLLINS AGAINST GIVING BACK FUND, INC. AND NEXUS GLOBAL)

(Violation of Section 504 of the Rehabilitation Act)
(29 U.S.C. § 794a (as amended)

104. Mrs. Collins re-alleges and incorporates paragraphs 1 through 103.

105. Section 504 of the Rehabilitation Act of 1973 (as amended) (hereinafter "Rehabilitation Act") provides that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or activity conducted by any Executive agency[.]"
>
> 29 U.S.C. § 794a (as amended).

106. Plaintiff is a qualified individual with a disability as defined in 29 U.S.C. § 705(20).

107. Defendants receive federal financial assistance.

108. Defendant(s) subjected Ms. Collins, because she is a victim of complex post-traumatic-stress and bipolar disorder degrading and humiliating treatment including but not limited to excluding her from the NEXUS Summit at which Ms. Collins would have been afforded the opportunity to form alliances with some of the most respected individuals in her chosen field of endeavor.

109. Defendants' actions constitute unlawful discrimination under Section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

110. Ms. Collins suffered damages because of Defendants' discriminatory conduct.

111. Ms. Collins is entitled to declaratory and injunctive relief, compensatory damages, and reasonable attorneys' fees, litigation expenses and costs. 29 U.S.C. § 794a (as amended)

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court enter a judgment:

(a) Declaring that the acts, practices and omissions complained of herein violate New York State prohibitions against slander;

(b) Declaring that the acts, practices and omissions complained of herein violate New York State prohibitions against the intentional infliction of emotional distress;

(c) Declaring that the acts, practices and omissions complained of herein violate Section 504 of the Rehabilitation Act;

(d) Directing Defendants to take affirmative steps, including but not limited to revising policies and procedures and training employees on the requirements to comply with Section 504 of the Rehabilitation Act;

(e) Ordering the Defendants to pay compensatory damages, including damages for emotional distress, pain and suffering;

(f) Ordering the Defendants to pay punitive damages, where available;

(g) Awarding the Plaintiff reasonable attorneys' fees, litigation expenses and costs; and,

(h) Awarding such other and further relief as the Court deems just and proper.

Dated: July 12018

Millerton, New York

Respectfully Submitted,

/s/ Joshua A. Douglass

Joshua A. Douglass
Millerton Plaza, Route 44
PO Box 481
Millerton, NY 12546
(518)789-3636
(518)789-6654
jdouglassesq@gmail.com

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that she is the plaintiff in the above action, that she has read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at New York, NY on July 17, 2018

_[signature]_
JENNIFER COLLINS

## CERTIFICATION

I hereby certify that on July 25, 2018, a copy of the foregoing COMPLAINT was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

JOSHUA A. DOUGLASS, ESQ.

By: /s/ Joshua A. Douglass
Joshua A. Douglass, Esq. (JD 5674)
NYS Bar Registration # 4349759